All right, so let me say that the third member of our panel today is Justice Gordon, and Justice Gordon was unable to attend the proceedings today, and with his apologies, he asked me to indicate that he certainly will have an opportunity to review the recordings of today's proceedings and participate in our decision making. All right, so would you approach the podium, please, each of you, and identify yourselves? Good morning, Your Honors. Jim Pitterquart on behalf of Plaintiff Appellant, Mack Industries, Ltd. Good morning, Your Honors. Larry Kowalczyk, Inquiry and Error on behalf of Defendant Good morning. All right, so what we'll do is we'll allow 15 minutes aside, and the appellant can certainly reserve some time for a vote. All right? All right, you may proceed. Good morning, Your Honors. May it please the Court, Mack Industries, Ltd. is an Illinois corporation that owns and or manages over 150 single-family homes in the Village of Dalton. Mack has owned and or managed properties in Dalton for approximately 10 years prior to the issues giving rise to this case. And for approximately 10 years, Mack operated its business in the Village of Dalton without incident, or at least notable incident. Starting in the summer of 2010, however, for reasons unbeknownst to Mack, Dalton started to change its practices and started to systematically refuse to enforce its water ordinance as written. Counsel, let me ask you, what is your legal interest? What's Mack's legal interest in how the Village enforces the water ordinance since there is joint and several liability here on property owners? That is correct. The ordinance does provide joint and several liability for both the tenant and the owner, which in this case is Mack Industries. The legal interest is, in many cases, the tenant vacates the property, leaving a very large unpaid water bill. And in many instances, that is an uncollectible debt against the payment of this debt. In fact, the Village will not issue a rental occupancy permit to allow a new tenant to occupy the property or allow a new tenant to switch the water bill into that new tenant's name until the prior bill is satisfied in full. So in essence, what the Village is doing is it's depriving Mack Industries of the ability to earn revenue on its properties in the Village of Dalton. So it's a business interest, and as I stated, there's 150 properties at issue. So with each instance of Dalton refusing or failing to enforce its ordinance, Mack continues to incur liability and potential debt as well as real debt. So does the Village expect full compensation in those instances where the tenant doesn't pay for the water bill? Absolutely. The Village requires Mack Industries to pay 100 percent of the outstanding water bill as well as a turn-on fee in the event the water was turned off before they will allow a new tenant to occupy the property or a new tenant to put water in that new tenant's name. Mack filed a four-count complaint against Dalton. Count 1 was a declaratory judgment count, essentially asking the court to find or declare that Dalton be required to enforce or apply its water ordinance as it's written. Count 2 was a breach of contract against Dalton related to damages suffered by Mack Industries because Dalton refused to follow or enforce its water ordinance as written. Count 3, which is not at issue before this court, sounded in retaliatory conduct against the Village of Dalton. The plaintiff appellant essentially concedes that count 3 is barred by the Torn Immunity Act, so there is no issue with respect to count 3. Count 4, however, is directed against Bert Herzog personally, who as counsel mentioned, was the village manager at all times relevant to the issues before the court. And count 4 alleges that Mr. Herzog engaged in a systematic pattern and practice of willful and wanton conduct directed to Mack Industries because Mack Industries brought these issues to the village and Mack Industries threatened to sue the village if it failed to enforce its water ordinance. Regarding to the deck action, if the village's non-enforcement of the ordinance is found to be unlawful, how would the declaration of action be enforced? Judge, that's a great question. Obviously, it's difficult to police a village. It would be akin to an injunctive relief where the court would direct Dalton to enforce the village ordinance as written. However, if your honor was able to, and I'm sure your honor did, review the myriad of correspondence attached to the complaint, Mack almost took upon itself the policing mechanism by notifying the village in each instance when the water bill became excessive and the tenant wasn't paying it. So Mack would periodically get the water bills for each of the respective tenants on their properties and would contact the village of Dalton and say, there's a $300, a $400, a $500 water bill on this property. It's not paid. Please enforce your ordinance as written. Please red tag it or ticket it for shutoff. And then if the tenant doesn't pay the bill within 10 days per the ordinance, the water is supposed to be turned off at the property. So essentially, Mack would police the ordinance for Dalton. All Dalton would have to do is take the action provided for in the ordinance. And in many instances, and I know this isn't relevant for Dalton, but in many instances with the other suburban communities surrounding Dalton that Mack deals in, when a turnoff notice is issued to that tenant, 75% of the time, if not more, they go and pay the water bill because they don't want the water shut off at the property. They realize if the water is shut off, the property becomes uninhabitable. So simply issuing a turnoff notice... Well, let me ask you this though. Why is it Dalton's responsibility to Mack to make sure that these water bills are paid? I mean, can't Mack take other steps to protect itself, such as I've seen, you know, we've seen many times that, you know, provisions in leases that say that you need to pay the utilities every month and you need to show us a paid utility bill every month. Otherwise, we'll evict you. I mean, aren't there other ways other than shutting yourself in this situation? Judge, the short answer is yes. In fact, Mack has such language in every one of its leases with the tenant that requires the tenants to pay the water bills, pay the utility bills. However, the enforcement mechanism in that case is to serve a 10-day notice on the tenant and then go through the eviction process, which is very timely, very costly, and with the backlogs with the sheriff, doesn't result in the tenant getting out of the property until four, five, six months later. In the meanwhile, the water damages continue to accrue or the water bills continue to accrue. They continue to remain unpaid. And then Mack ultimately bears responsibility for payment of same. Additionally, Judge, we did... Well, isn't that just saying that it's more convenient for Mack to have the village enforce its rights with regard to making sure that the water bills are paid? And wouldn't the the village, since we have to expend public monies in policing these things, it's more convenient for the village to have Mack police their rights? Well, I would think it would be in the best interest of the village of Dalton to enforce its water ordinance as written because Dalton buys its water from the City of Chicago. It incurs a debt with the City of Chicago related to the provision of water. It's in Dalton's best interest to make sure that that debt is satisfied by collecting from the tenants. That's what Mack thinks it's in Dalton's best interest. But doesn't Dalton have the right to make those decisions on its own? Doesn't Dalton have the right to allocate its resources in a particular way? And in this particular case, hasn't Dalton decided that it doesn't want to allocate additional resources towards policing these water bills on a monthly basis? Certainly if Your Honors find that this is not a contract as detailed in the Brooks and the case law that we cited, then Your Honor is probably correct that under tort immunity, Dalton doesn't have to enforce the ordinance. It doesn't want to enforce or it can enforce them selectively or it can enforce them in this situation, but not that situation. But under Brooks and the case law that we cite, the provision of water service by a municipality to an end user, a tenant and or the owner of the property, sounds in contract and therefore isn't barred by tort immunity. Well, following up on Justice Palmer's question, is there any case law that indicates that the courts have the authority or the power to direct municipalities to collect revenues in a certain way and from a certain type of people? Because that's basically what you're asking this court to do, is to have the village of Dalton collect revenues in a certain manner and from certain type of individuals. Is there any case law anywhere that would give this court or any court that type of authority? I think the only case law that would speak to that would be the case law that characterizes the provision of water service as a contract between a municipality and the end user. In which case, the cases that we cite, Brooks, Tepper, even N.K. Fairbanks basically state that it's a contract between the municipality and the end user and that the contract should be enforced as it's written. So we're not asking Dalton to do anything that's not contained in the ordinance. We're asking them to enforce their ordinance as they wrote it. In other words, when it's permissive, when it uses the terminology may, may do this or may do that, we're not suggesting that Dalton is obligated to do that. However, in many instances, the ordinance language uses the term shall. And it specifically uses the term shall, if I could direct your Honor's attention to what I think is a critical paragraph. It uses a term shall in section 7-6-7-4 of the Village of Dalton ordinances. And there it says, in the event that charges for such service become delinquent as defined in section B of the subsection, the collector is hereby authorized and directed to cause notification to be given in writing to the owner of the premises, the occupant thereof, and the user of the service that such delinquency exists and that services shall be discontinued without further notice. So what it's saying essentially is that once the bill is delinquent, the village is supposed to send notice to the owner, shall send notice to the owner, the bill is delinquent and services will be discontinued without further notice. But weren't they doing that here? Weren't they sending notices? They weren't sending any notices at all? No, Judge. They were not sending notices. Well, MAC was receiving the notices. MAC was receiving delinquent water bills. And then in many instances, MAC was receiving shut-off notices on properties that were paid current and had new tenants in there. So in other words, Dalton was operating three, four, five months behind the present. But given the fact that the ordinance has the joint and several liability with regards to the water, isn't that sufficient since they are sending out notice to one of the parties, right? They're sending the water bills, they're actually sending the water bills, the water bills themselves to the tenant, and then MAC is going to Dalton and actually pulling copies of the water bills. So the tenant is getting the water bills, the tenant knows that they're delinquent, but there are no shut-off notices being sent. So the tenant, their presumption is, if they're not going to shut off the water, I'm not going to pay the bill. In many instances, although it's joint and several, it's an uncollectible debt against the tenant. And we are doing what Your Honor suggests, which is we are filing the eviction cases against the tenants, we are getting judgments against the tenants, and they're essentially uncollectible. If the tenant's not paying the rent, they're not paying the water bill. The water bill is a smaller issue compared to the payment of rent. So we are getting the orders of possession, we are evicting the tenants, but what's happening is because Dalton isn't enforcing their ordinance the way it's written, the water bills are $700, $800, $900, $1,000 by the time the tenant is out. Then what happens is Mack comes in, pays the water bill so they can put a new tenant in, and then takes issue with Dalton's practices going forward. So for years, from 2010, if Your Honor looks at the correspondence, from 2010 to January of 2013, we're sucking it up and just paying the bills. And Dalton is not doing anything different. They're getting all their money because they're getting it all from us, because they know  So we pay the bill, and Dalton's position is, why should we do anything? Why should we enforce our ordinance as written? Because Mack has no recourse. Could you give me that, I hate to make you step backwards, but could you give me that section number again that you just recited that requires the shutoff? That is section 7-6-7-4. It's titled Bills for Service Delinquencies. Now you know that in their brief, we'll talk to them about it in just a second, but in The ordinances, the applicable ordinances, do not require them to proceed with shutoff. It just authorizes them to proceed with shutoff, and therefore that's a discretionary provision. My response to that is, when the ordinance is permissive, it uses the term may, and it does use the term may frequently in the various ordinances. However, when it's mandatory, it uses the term shall, and I think that's statutory construction. I think when the word shall is used, it's not permissive, it's mandatory. And the applicable section, as I said, is 7-6-7-4, which uses the terminology shall, not may. And another argument that the appellee makes in his brief is that if this is a contract rather than an ordinance, we can't amend or repeal it. And A, that issue is not before the court. We're not contending or contesting that they have no right to repeal or amend the ordinance. In fact, they have an absolute right to do that. But then they must enforce the ordinance as amended. Or if they repeal it and there's no ordinance, then I don't know how they can collect for the provision of water without having some type of obligation on both the recipient of the water and the entity providing the water. So we're not arguing that they can't amend or repeal it. We're simply arguing that they should enforce it the way it's currently written. In fact, if we take their argument to its logical conclusion, there'd be virtually no check or balance on water and DALT. In other words, DALT could do what they want, charge what they want, and it could be arbitrary. In fact, in paragraphs 35 and 36 of our amended verified complaint, we plead exactly that. We say that there were billing errors and overcharges. And we cite one example where Mack was overcharged $609.49 for water service. At a minimum, we should have been allowed to amend the complaint to pursue an overcharge. In fact, the Tepper case did exactly that. The N.K. Fairbanks case, which is cited by the appellee, did exactly that. In the instance of an overpayment, the court allowed the recipient of the water to pursue the overpayment. So in the 1910 case cited by the appellee, it was the same situation. The court allowed five years of overpayments to be recaptured. And that's what we're essentially arguing. That's one of the issues we have here is that we were flat out overcharged for water. And if the appellee's argument is taken to its logical conclusion, we'd have no recourse. Tort immunity would allow them to charge whatever they wanted, whenever they wanted. And we would not be able to challenge that. Following on the tort immunity, in your brief, you object to the village's reliance on 2-206. Did you object to the village's citation of section 2-204 in the circuit court, the lower level? With reference to the village? Granting similar immunities to the village? I believe our argument focused on the fact that section 2-202 would be an exception. Although that would apply to Mr. Herzog. With respect to the village of Dalton and tort immunity, we've essentially conceded that count three should have been dismissed. So we're not objecting to the application of tort immunity as to the village of Dalton for the issues that we plead in the complaint. However, with respect to Mr. Herzog, we're saying for 2-202, he is not protected from tort immunity because his conduct was willful and wanton. And how was his conduct willful and wanton? We were at meetings, specifically I was at meetings with Mr. Herzog, where he essentially said, because you involve lawyers in this situation, because you threatened to file a lawsuit, everything is going to be more difficult. Everything with MAC is going to be... Well, isn't that usually the case when lawyers get involved? Doesn't it become a little more difficult? That is true, although I'd like to think in many instances when lawyers get involved, they can reach a reasonable conclusion. But the opposite happened in this situation. But with respect to Mr. Herzog's conduct, we plead several instances of willful and wanton conduct. Specifically, Mr. Herzog directed village officials to refuse to turn off water on severely delinquent accounts. He directed village officials to turn water off on accounts that were already paid by MAC Industries, had new tenants in there, so we've got a new tenant in there that has nothing to do with an outstanding balance, which was paid by MAC prior to the new tenant moving in, yet Dalton goes out and turns the water off, presumably because three months before that, we sent them a notice saying, turn the water off at this property, which they did three months later after the bill had been paid in full. So a simple check of the records would have revealed the bill being paid in full, and they wouldn't have turned the water off. So we have a new tenant in there that's paying their water bill as a good tenant, and they're deprived of the use of water. So is the conscious disregard for the safety of people or property here? Well, in that particular instance, the fact that a tenant has no water at their property would be a conscious disregard for the safety of that tenant. How long was that water off? Honestly, I don't have that information. I'm sure the situation was corrected in a matter of days. It certainly wouldn't be more than a few days. Another situation which results in the safety or conscious disregard for the safety is Mr. Herzog directed the police department to refuse police services to MAC. MAC Industries property managers would go out to the tenant properties to collect rent or would go out for a property inspection, and they'd be threatened by the occupant of the property and they would call the police, and the police would refuse to come. In fact, the direct statement from the police to the MAC Industries employee was, you're on your own. We're not coming out. Same issue with respect to fire services. MAC had a fire at one of its properties. The alarm went off. The police were dispatched 41 minutes later, and the property was essentially burned to the ground. If they had been dispatched in a timely manner, the fire department could have been called and the property could have been saved. MAC incurred $30,000 in damage just related to that fire issue. There was a refusal to issue occupancy permits for property that had just gone through the annual rental inspection, yet Dalton refused to issue the occupancy permits for the rentals. There was a direction by Mr. Herzog to re-inspect MAC properties that had just gone through and passed the annual rental inspection. Dalton is different than many villages. They have an annual inspection for owners that rent their properties. So annually, they pay a fee. The properties are inspected, and if they pass, there's no further requirement for a rental inspection. Many of the villages have what's called a rental inspection. When the property turns over, the village comes out and does a new rental inspection. Dalton doesn't do that, yet they engaged in a practice recently of requiring re-inspections of property that had already been inspected. Mr. Herzog's rent... What are the damages that you're seeking against Mr. Herzog? The damages at a minimum are... I should say, what's the relief? The relief would be monetary damages. It would be Mr. Herzog is not protected from tort immunity because he engaged in the systematic practice of willful and wanton conduct. At a minimum, we've suffered $30,000 in damages related to a destroyed home because fire services were denied. So are you looking for punitives as well? Yes. So could you just expand a little bit on the damages you're looking for? Because you're saying that he's not entitled to tort immunity, and so I assume you're looking for tort damages. Yes. So not loss of revenue? There would also be loss of revenue related to the rental properties that could not be rented because either occupancy permits were denied or we lost one tenant. Would you be entitled to, in a tort action, would you be entitled to loss of revenue? Or isn't that a contract remedy? That is true. Okay, so let's skip past that. And tell me, the damage to the home is something that you're looking for? Yes. Because it burned down? Yes, the home burned down. There's another issue where Mr. Herzog directed the building department to refuse to issue a demolition permit for one of Mac's properties. Another property in the village burned down. Mac hired a remediation contractor to demolish the home, remove any asbestos, the home was an older home. And the remediation contractor said they tried to apply for a permit with Cook County to demo the home. Cook County instructed the remediation contractor before a demo permit would be issued, the village of Dalton Engineer had to issue a letter indicating that the house was destroyed and needed to be demolished. For approximately one year, Dalton refused to issue that letter. So the home sat vacant, a rubbled home, which is a nuisance, a danger to the community. The house could not be taken down because a permit would not be issued. So Mac basically lost the revenue for a year plus on a home that could not be reconstructed. Mac was also required to install, Herzog directed Dalton to require Mac to install new water meters before transfer stamps would be issued on the sale of several Mac properties. So Mac incurred three to four hundred dollars per home to install a new water meter for no apparent reason. The old water meter wasn't damaged, wasn't broken, wasn't destroyed, it was functioning, it was an arbitrary requirement that Mr. Herzog directed the village of Dalton to implement before transfer stamps would be issued. Mac was forced to incur these costs or it couldn't sell the homes, at risk of being in breach of contract with the home buyers. At a minimum, plaintiff asserts that the above issues create a question of fact that are not ripe for dismissal on a motion to dismiss. At a minimum, discovery should have allowed to take place and possibly the case could have been resolved on summary judgment. But again, we were not given that opportunity. We were only given an opportunity to amend the pleading. If possible, I'd like to reserve five minutes of rebuttal. Of course. In short, plaintiff appellant would ask this panel to reverse the trial court's dismissal of counts one, two, and four of the verified amended complaint. Thank you. Thank you, Your Honor. Thank you. Thank you. Good morning, Justice Palmer, Justice Reyes, Larry Kowalczyk. Again, on behalf of Appley, the village of Dalton, and Bert Herzog, the retired village manager. I think the court has hit the nail on the head, so to speak, with respect to what Mac Industries really wants to do and what they are capable of doing and have conceded they're capable of doing. They are in the best position to select which tenants they believe will pay their bills, pay their rent. They're in the best position to craft language in their leases to require certain payments and to monitor tenants and to make sure that water bills are being paid by their tenants. What they are attempting to do, it seems, is really to force the terms of their leases onto the village and for us to monitor, for the village to monitor the 151 different tenants that may or may not be in the various properties throughout the village owned by Mac. Counsel, I have a question. The submission that was provided to the court and comes with a record, the water ordinance regarding red tagging, it is a proposed legislation, so is this actually law in the village? Or is this an actual enforceable ordinance? Yes, Your Honor. The municipal ordinance that was attached, actually to the complaint too, so the court is free to review it in its entirety as part of the 2615 analysis even, is ordinance in effect in the village of Dalton, which is a home rule municipality. And we beg to differ and we've put this out in our... So the title proposed legislation, is that just mistitling? The title that I saw, which was Exhibits 4 and 5 to the complaint, I believe, were the ordinances themselves. And if there is something in the record that says it likely is the same copy of the ordinance that appears otherwise in the record. And we respectfully beg to differ with counsel's view of what the red tagging provisions and the disconnection provisions of the ordinance itself actually provide for. And frankly, in the lower court, and again, there's no transcript to rely on in that, but much of which is being argued in our brief was brought up during those hearings with respect to the permissiveness and the use of the phrase, said meter may be considered for red tagging that appears in Section 7-6-7-2A, which is entitled Red Tagging and Shutting Off of Water, subsection A. Again, the authorizing of red tagging and authorizing of shut off is exactly that as the court indicated. It's an authorizing of it. There's no deadline that's enforced. There's no specific time frame by which the village is to do it. And there's no requirement that the village is to do it. What about this 7-6-7-4? The exact same scenario, Your Honor, because that particular ordinance, as I reread it, it again authorizes and directs notification to go out that the notification that's given in writing to the owner and the user is that the delinquency exists and that the services shall be discontinued without further notice. It's the notification that goes out to tell them that that will occur. Isn't this, just to get back  isn't this just a question of the allocation of resources by the village? Absolutely, Your Honor. My understanding is it's a small village. That's correct, with very limited resources. And it seems to me, based on what we're seeing here, the village has made a determination that they're going to let MAC go after its tenants for the water and not them because they have other things to do. And per the ordinance, it's the owner is jointly and separately responsible for the bill. It's the owner of the property that, I don't know why they put it in a nefarious light that the owner should somehow be responsible for its bills. They're the owner of the property. They may have tenants there. We don't know sometimes who's there, who's not there. As the owner of the property, it seems right and correct and not nefarious that the owner should be responsible for its water bills. What about this issue that Council raises that the notices for the shutoff are not going to the tenants or at least to the unit that are being occupied? The notices, Your Honor, in terms of what is contained in the record I don't believe says that notification has been, that the village has failed to notify these things. I think what they're claiming is they've advised the village that a tenant has left and their complaint, again, which is an enforcement type complaint is that the village didn't act quick enough even though there's no time frame for the village to act within its own ordinance that they didn't act quick enough to do what MAC wanted it to do based on the limited resources that the village has at its disposal. The village, again, does its best with the limited resources that it has, but there's nothing mandatory regarding the deadline or the timing that MAC has. They already had one tenant out and a new tenant in when you shut the water off. That was a retaliatory action. Again, as it's phrased in that one instance that there was a water shutoff and, again, at the ministerial level of someone who has shut off the water and the allegations that are being made as against the village administrator for allegedly conspiring or somehow involved in this, again, water service gets disconnected and it's unfortunate if someone had moved in in this one instance. Your contention is that there's nothing in the ordinances that require you to take these actions against the tenants just by the permissive way in that they're worded. Let me ask you this. Could you tell us your position on whether or not there's a contractual relationship at all between anyone, the village and anyone? Absolutely, Your Honor. With regard to the provision of water and with regard to the enforcement of the water in the ordinances, regardless of what they say in terms of whether they're permissive or not. Our position in our brief is that this court should decline to apply the very limited purpose of the Brooks holding to this situation. And from that standpoint, again, the broader picture of the policy concerns of hamstringing a local municipality by requiring in these circumstances that a contract be imposed or be viewed as a contract specifically for purposes of, again, this is an enforcement. You didn't enforce your ordinances quickly or as the way we liked it again. That's the classic scenario that the Tort Immunity Act section is there on the books. And again, we would respectfully ask this court to take a more cautious approach in the National Railroad Passenger Court case from the United States Supreme Court, which again said that the law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise. And again, in that case recognizing, Your Honors, that it did not involve a specific water situation, but again asking Your Honors to consider that higher authority with respect to the ramifications from a policy standpoint of how a local municipality with very limited resources could again be hamstrung by being put in a situation, again, where in order to even, let's say to amend an ordinance to provide actual notice to its constituents. Well, considering the limited resources that the village has, wouldn't the village benefit from a declaration action being granted to MAC for the non-enforcement of the water ordinances? I don't believe so, Your Honor, because again the immunity in our position should apply because it's clearly an enforcement, you didn't enforce it right you didn't enforce it the way we wanted to type scenario. I don't think the village would benefit from a case then moving forward in the legal system that again could put it at a contractual risk of liability and one that, again, it should be immune from under our analysis of the case law that we wish this court and suggest that this court respectfully should follow. From the standpoint of public regulation in general, ordinances are, you know, should be amended it's why you elect your officials, that's why today people are out at the polling booth to hopefully elect the officials that they want to responsibly provide for ordinances and legislation that they can then enforce and change under the assurance that under the Tort Immunity Act they're protected from failing to enforce it in a way that one individual or one corporation wants it to enforce it. Let me ask a question about the Tort Immunity Act does that statute apply to declaratory relief as opposed to claims for damages? I believe so, Your Honor, because it's essentially a declaratory of the breach of contract type scenario that they again want a declaration that there are these contract rights, that there is this responsibility by the village and I believe that, again if the court follows the U.S. Supreme Court cautious approach, the Tort Immunity Act should apply to an enforcement type action where they want this declaration that you are violating or not enforcing your ordinance in the manner we want you to. Are you aware of any cases out there that address that particular issue? No, Your Honor, in fact as of this last few days, we were you know, scurrying to see if there was any analysis of it and it's such a limited issue that it, again they go back to 1978 on their case and I have a more recent one, but again it's not in the water context but it is in the municipal ordinance contractual context. Just briefly with respect to count 3 that was essentially, yeah, they did not appeal, Your Honor raised the issue of conceding 2-204 as to the village I would contend that 2-206 again is a recitation of 2-204 but as to an individual which is why Mr. Herzog the count against him should also be provided the tort immunity for again failing to issue a permit allegedly or failing to issue or allow a home to be demolished Well, they're arguing that his conduct was a conscious disregard for the safety of others and for the safety of property And under 2-206 I don't believe the malicious intent applies according to my review of the case law as to that particular instance and in fact the tort immunity that they were arguing was 2-208 which dealt with administrative proceedings or prosecuting a proceeding and that doesn't apply with respect to the willful wanton that they want to there is no proceeding in the facts that are presented So they're relying on 2-208 and it's your position that 2-208 which has a provision or an exception for willful wanton conduct your position is that 2-208 doesn't apply to him because there's no institution or prosecution of a judicial or administrative proceeding? That's absolutely correct. The facts as pled in this complaint do not mention anything about that it's just not the case The 2-206 immunity is the one that is again the individual version of the 204 immunity. Isn't the act of or not acting on the enforcement of an ordinance fall within that purview in terms of enforcement, law enforcement and those type of proceedings? Absolutely correct Judge. The immunity that deals with you cannot be compelled to enforce your ordinance or you're immune from that sort of action is exactly what's covered in this and is why the count as against Mr. Herzog should also fall by the wayside In the um well What about the issuance of citations? Isn't the issuance of a citation the institution of a proceeding? A citation in and of itself unless it's called up for hearing I don't believe is a again this is one that under 2-104 the issuance denial suspension revocation of permit license certificate approval it's covered under that specific immunity as well but I do understand your honor in the issuance of a citation for example could if called up for hearing result in an administrative action that's not how it's been pled and in fact it's more the denial of a permit is the language that's being used in the complaint Well he alleges or Mac alleges that Mr. Herzog instructed village employees to issue citations for at Mac properties without giving Mac a warning and a chance to cure the violations. These citations they would call for what? Fines? They would under the technical circumstance Isn't that some type of administrative proceeding? To testify? As pled there's no actual proceedings or actual administrative ramifications from the allegation that he directed people to do this. There's nothing that follows in the record regarding actual fines, violations that I have it's more along the lines of they just haven't shut off the water quick enough and therefore we've incurred these bills. At the end of the day I believe that Mac is in the best position to control it's tenants to control it's leases and drafts Well but there has to be some way I think you'd have to admit If you have a rogue inspector or a rogue village employee that starts to issue citations against a property without probable cause without any without probable cause there has to be some legal remedy to stop that I think it would be in perhaps federal court or not been pled but with respect to 1983 correct but under the Illinois statute as drafted again the nefarious motive I believe has been subject of this courts inquiry in that just not in this type of cause of action should it be asserted Let me ask a question In the village of Sleepy Hollow this court ruled that the immunity under 2-201 doesn't always take precedent over 2-208 because of the ministerial acts How would you respond to that? The way I would respond to that your honor again we harken back to the 2-206 immunity with respect to Mr. Herzog and the 2-208 analysis was inapplicable in our view in our brief so that the 2-201 trumping of it I don't think should be an issue for this court based on the immunity we believe should apply in this case Which is under 2-206 Correct your honor I see that my time may be Well let me ask you one further question and I guess I'd have to ask you to just for the purposes of discussion if 2-208 was applicable counsel and I had a discussion with regard to the type of damages that it would be appropriate to seek in a tort action for willful and wanton conduct and he cited that some properties were burned which would be physical damage and I think would not be barred under the prohibition of economic loss for tort damages what do you have to say about what damages he would be able to seek in that situation Counsel has suggested he would seek punitive damages outside of the tort realm but your honor is correct in terms of lost profits and any of that Mormon analysis would be barred I know the allegations have to be accepted as pled but again Mr. Herzog directing the fire department not to respond in these what I will call far-fetched type allegations which again we have to accept based on the pleading however the property damage as a direct tort result from his initiating a or failing to allow a response again this is one where federal court perhaps if there is some sort of retaliatory claim available to them I don't think there is proper damages here from the standpoint of other than your honor suggested maybe the property damage of the house but again the tort damages alleged wasn't really covered as much in the briefing but you don't have to go to federal court to file a 1983 action correct but it's not pled so well I mean well but this was this thing was dismissed with prejudice wasn't it that's correct your honor why couldn't we just say you know he has leave to replete he can file a 1983 action because at the end of the day your honor I think the immunities here and all that was pled is the state court action under the federal action again he might run into resistance from the standpoint of the timing that he alleges this occurred and I don't know again that would be a relation back type analysis in that thank you your honors for the opportunity to address you and we do believe that the trial court properly granted under 2619 as well as 2650 thank you thank you counsel roboto yes take your time in counsel's argument he indicated that mac industries was asking this court or suggesting that mac is in a better position or strike that counsel suggested that mac industries asserted to this court that mac wanted dalton to enforce its leases and that's simply not the case what mac industries is requesting or what mac industries has pleaded in its complaint is that dalton follow its water services ordinance as it's written we're not asking them to do anything differently we're not asking them to enforce our lease we're not asking them to evict tenants what we're asking them to do and I quote as I read their ordinance there's two sections section 7-6-7-2a second paragraph after the expiration of the time for payment specified herein before a list shall be compiled of those premises for which asserted rates and charges remain unpaid and the water supply of the premises against such rates and charges remain so outstanding shall be authorized for red tagging and shut off the village clerk shall send specific notice to the owner of the premises scheduled for red tagging via U.S. mail said notice shall specify the date and time the meter will be red tagged and the water will be shut off that's all mac industries is asking do what your ordinance requires you to do in many instances when the tenant gets that notice the tenant will pay the bill everybody wins water is paid dalton gets to collect the water bill they get to pay the city of Chicago for the usage mac industries doesn't have to evict the tenant we don't want to evict tenants for things that because people can't enforce the ordinances the way they're written the next section is 7-6-7-4 which I've already cited to the court which requires and it states and I quote and the user of the service that such delinquency exists and that service shall be discontinued without further notice again the word shall not may not permissive and I suppose that counts 1 and 2 hinge entirely on this court's finding that the provision of water is a contract certainly if it's not a contract and it's a tort then tort immunity would apply but the issue I have is the statute the ordinance refers to a the provision of a commodity water and b it references consumer and customer all of which sound in a contract and then we have the case law that we cite that is specifically on point it all deals with the provision of water or water services the Roseboro vs. Moline case 2nd District 1961 of course the Brooks vs. Wilmette case 1st District 1979 and then counsel suggests that all the cases are old well that's not entirely true Tepper vs. County of Lake 2nd District 1992 that's a more recent case all find that the provision of water by municipality is a contract not a tort if it's a contract it's got to be enforced the way it's written Mack is not asking for anything more than that counsel spoke about the national railway case in that case a it doesn't deal with water b it deals with intercity passenger railway transportation and in that case the United States is not a party to the agreement the United States enacted legislation that said that Amtrak and the railway providers have to enter into a contract that would exempt the railway providers from providing this intercity passenger transportation the United States was never a party to that contract the Supreme Court essentially said they're not even a party to the extent there is a contract it's not with the United States it's between Amtrak and the railway providers and then Justice Palmer I think you hit the nail on the head with respect to the tort immunity the ordinance violations the fact that these ordinance violations are arbitrarily issued there are fines associated with those violations and there are hearings that is absolutely an administrative process that would take Mr. Herzog's actions outside of the protections afforded by tort immunity and that's essentially well let me ask you this so your contention is that 2-208 keeps you in the game with regard to Mr. Herzog what's your cause of action against Mr. Herzog is it a contract action or is it a tort action with respect to Mr. Herzog it's a tort action it's essentially retaliatory conduct it's I suppose it would be a section 1983 but again we were never given leave to amend to plead those claims and we've since learned new facts that would give rise to additional claims do you ever ask for leave to amend to add a 1983 action absolutely judge I ask for leave to amend generally not specifically directed to a 1983 action the trial judge dismissed this case outright because he believed everything was barred by tort immunity although there's no transcript we didn't have a court reporter that was essentially what the judge stated he believed every claim was barred by tort immunity he didn't believe that the provision of water was a contract as we argued in the Brooks case he's a former alderman at a minimum and I argued this in my opening argument in a minimum we should have been given leave to replead at a minimum I'm not saying that the court was wrong in the dismissal of the tort claims but at a minimum we should have been given leave to replead and we're asking the appellate court to reverse and remand consistent with that position thank you for your time thank you thank you counsel the court thanks both counsel for your presentations today and for your excellent briefing and we will take the matter under advisement we're going to take a short recess to reconstitute our panel Justice McBride is going to join us and we'll continue with the next case thank you very much